Brewster, J.
Claimant’s husband sustained compensable injuries in 1941, and received various awards, first for total and later for partial disability, for periods extending to April 23, 1946. These were all paid to him by the carrier. Thereafter, his injuries having caused him to be permanently partially disabled, he and the insurance carrier agreed, pursuant to subdivision 5-b of section 15 of the Workmen’s Compensation Law, upon a “ Non-schedule adjustment ”, as to his claim to future compensation. This came on for a hearing before a referee at which proof was taken, and the matter of the approval of their agreement was referred to the Workmen’s Compensation Board for consideration and decision, and it held hearings thereon and took evidence in the matter on May 15, June 18 and June 25, 1947. At the conclusion of these hearings the minutes disclose that the presiding member dictated upon the record that the “ lump sum schedule adjustment ”, with certain stated adjustments of its amount, “ is hereby approved ” etc., ‘1 and case is closed. ’ ’ Then followed a direction that: ‘ ‘ Carrier is instructed to send claimant’s check to the Administrator of Workmen’s Compensation Board.”
A “ Memorandum of Decision ”, entitling the matter as “ Before a panel of three Members on June 25, 1947 ”, and embodying substantially the identical decision and direction as appears on the minutes of said hearing, as aforesaid, was later prepared, and was dated and filed on July 9th, which was also the date of the formal notice of the decision and award. The “ award ” in such a case was the approval of the nonschedule adjustment.
The employee died July 8, 1947.
By the decision appealed from the board has held the proceeds of the approved adjustment payable to the employee’s *132 widow. We are not concerned about whether under its continuing jurisdiction the board had power to rescind its approval of the adjustment either before or after the employee’s death because no such power was exercised or attempted. At "the date of the death the approval given as aforesaid stood intact. Since the agreement of the parties, and the board’s approval thereof, had brought about' the nonschedule adjustment, if its final constitution occurred as a matter of law on June 25, 1947, then the employee’s right to it became .vested'before he died.
The provision of section 33 of the Workmen’s Compensation Law, to the effect that any compensation diie and unpaid to an injured employee at the time .of his death shall be payable to his “ * * * surviving wife ” etc., has been held by this court to apply to a lump sum adjustment. (Matter of Bogold v. Bogold Brothers, Inc., 218 App. Div. 676, 677, affd. 245 N. Y. 574.) •
The question is whether what was done at the .conclusion of the June 25th hearing so culminated into and finally constituted a nonschedule adjustment as to be then and there binding upon the parties to the settlement and .enforcible, notwithstanding the subsequent death and the later filing and notification of the formal decision.
I agree with respondent that the filing and notification of the decision was a ministerial matter, and that all which was necessary to be done to make it efficacious and binding upon the parties, was done on June 25th, and thus that the pronouncement of the board’s approval on said date created an award of compensation which was due but unpaid within the reach and meaning of said section 33..
A decision and award is akin to a judgment. What was done by the board at the conclusion of its hearing on June 25th, as aforesaid, was a rendition of the approval and the creation of the adjustment. The filing and the notification thereof is akin to the entry or docketing of a judgment and notice of its entry. Here the final determination or judgment sought was a non-schedule adjustment of compensation. The hearings held by the board were to determine whether it would approve and thereby create it. Its approval was necessary to accomplish what the employer and the carrier thus sought and it was all that was necessary. When it announced its approval at the end of the ‘ ‘ trial ’ ’> as it were, such was akin to the rendition of a judgment by a court. Indeed, the board’s direction as to the sending of the carrier’s cheek in payment of the approved adjustment bears resemblance to the issuance of an execution *133 in enforcement of a judgment. Nothing further remained to be done to legally constitute the adjusted compensation and enforce its payment except the, performance of the ministerial act and clerical service of recording and giving notice thereof in accordance with the rules and practice of the board. All essential judicial functions were completed on the “ day of judgment.” This would have been the case had a judgment been similarly rendered by a court of law or equity. (Vogel v. Edwards, 283 N. Y. 118, 121.) The employee’s death frustrated the execution of certain plans disclosed to the board and which induced its approval. These had to do with an arrangement of the employee’s domestic affairs and the investment of the proceeds of the adjusted compensation. Although such induced the approval, in the nature of things, the plans for the future were not a condition upon which the creation of the adjusted compensation depended as a matter of law. Such compensation was due to him and was unpaid at the time of his death and, under the statute, it then became payable to claimant. (Workmen’s Compensation Law, § 33.) The decision should be affirmed.
Poster, P. J., Dbyo, Santry and Bergan, JJ., concur.
Decision affirmed, with costs to the Workmen’s Compensation Board. [See post, p. 972.]